COWEN et al. v. SAMUELS.

District Court, S. D. New York.

May 4, 1940.

M. Daniel Nissenbaum, of New York City, for plaintiffs.

Harry C. Bierman, of New York City, for defendant.

BYERS, District Judge.

The plaintiffs seek an injunction and the usual accounting for profits for the alleged infringement of Letters Patent No. 1,559,-678 granted November 3, 1925, to Stanley Cowen (one of the plaintiffs) on application filed June 11, 1924.

Claims 1 and 4 are in suit and read as follows:

"1. In a game rack, an inclined member having a concave front surface in combination with a foot piece therebelow, said member and foot piece adapted to support a series of tiles out of contact with said concave surface and a substantially horizontal ledge adjacent said member and a plurality of counter holders mounted on a metallic base at one end of said member said base struck up forming end stops for tiles carried on said member and on said ledge."

"4. In combination with a game rack a counting means comprising a plurality of

holders adapted to carry selected counters, said holders carried on a base forming an end member against which the rack surfaces abut and forming stops for tiles carried on said rack."

In addition to the customary defenses of non-infringement and invalidity, the defendant asserts that the structure of the plaintiff lacks utility; that there are improper parties plaintiff; and that the marking with a patent notice was not in accordance with the requirements of law and therefore was without legal effect.

Plaintiffs' Exhibit 5, one of the structures sold by defendant, will be assumed to infringe, and consequently it will be convenient to discuss the question of validity.

The alleged invention described in the plaintiffs' patent is a rack used in the playing of Mah jongg, upon which the tiles are disposed.

As used, the rack has the coin holder, later to be referred to, at the left and in this position there are three plane surfaces rendered available for the tiles: The first is nearest the player, and upon it the tiles are disposed in a slanting or diagonal position so that he alone can see their faces; there is an adjacent horizontal surface upon which the tiles are also placed; and then on the far side of the player, there is a vertical surface against which the tiles are placed in that position, resting upon the playing table, and their faces are exposed to other players in the building of a "wall".

The rack is made of wood or other suitable substance and is about sixteen inches in length, and the base is about two and one-quarter inches wide; a bevel separates the diagonal plane from the horizontal plane, presumably for convenience in disposing the tiles on the latter.

The invention, if any, consists in combining with the rack the metal coin holder, the vertical upward-turned edge of which is affixed to the end of the wooden rack—thus forming a vertical element which projects beyond the diagonal surface of the first aspect of the rack, above the horizontal aspect of the second, and beyond the vertical aspect of the third, so that the coin holding element constitutes, as to its vertically disposed end, stops which prevent the tiles from sliding off the rack at the left end, from any of the surfaces.

The single question for decision is whether patentable invention is disclosed in the structure described in the two claims.

The specifications clearly assert that the end stops as formed were within the inventor's proclaimed purpose, thus: "The base 10 is stuck up at 11 and forms one end of the rack with projecting portions at 12, 13, 14, respectively forming end stops for the tiles ranged in the several positions as 4, or on the ledge 5 or stacked in wall formation as shown at 15."

Again, after referring to the position of the tiles during the course of the game, the specifications say: "In each instance the tiles are lined up against the end members, 12, 13, 14 respectively."

There was no invention in providing an end piece to keep the tiles from slipping from the left extremity of the rack.

*Luce, No. 1,504,634, granted August 12, 1924, on application filed May 15, 1923:* This patent has to do with Mah jongg and implements to build the wall which seems to be the object of the game. The specifications, in referring to one of the members such as the rack, say: "The closed ends likewise keep the tiles from slipping off endwise."

*Sanchez, No. 1,506,088, granted August 26, 1924, on application filed October 21, 1922:* This is a patent for a Mah-juck rack. It would appear that the game for which the rack is constructed is the same as Mah jongg, and it may be that the variation in the name is more apparent than real. The specifications, referring to it, say: "The well known and ancient Chinese game of mah juck is played by means of small blocks certain of which are designated with domino-like characters and others of which are denoted by Chinese characters.

Later it is stated: "At one end, preferably the left hand end of the rack, there is provided a projecting device or bar 10 to form a guide or stop against which the blocks can be shifted in building the wall, as shown in Fig. 4." And this is claimed as part of the invention, which is for a rack such as the one in suit "and a device projecting from one end of the rack to act as a stop for the contiguous end of the wall being built". That probably refers to what has been called herein the vertical aspect of the plaintiffs' rack.

*Kimmel, No. 1,511,731, granted October 14, 1924, on application filed October 19;*

*1923:* This also is for a game rack not materially to be distinguished from the one in suit, and the specifications describe it as "a block 5, preferably of wood, and formed with a longitudinal trough 6, the ends of which are closed by metal plates 7 and 8, these plates having rearwardly-projecting arms 9", the latter functioning in connection with what has here been called the vertical aspect of the rack. In claim 1 the rack is said to comprise "a block provided with ends projecting rearwardly from said block * * *", and the same appears in claim 2.

*Maurer, No. 1,529,660, granted March 17, 1925, on application filed April 20, 1923:* This patent, also for a rack, discloses as to its drawings, end pieces forming stops, but no mention of them is made in either the specifications or the claims.

*Richard, No. 1,571,374, granted February 2, 1926, on application filed November 11, 1922:* This is for a game playing implement, special reference being made to Mah jongg. End stop pieces are quite clearly shown and are referred to in the specifications as follows: "The ends preferably project beyond the rear wall to form convenient stops."

■ The plaintiffs object to the consideration of all of the foregoing patents for the reason that none of them was issued prior to Cowen's filing date, although the several applications antedated his, by over a year in some instances. It is thought that this objection cannot avail in light of Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651. Certainly Cowen did not invent the end stop pieces and, to that extent at least, his proof is deficient.

■ Game counters, namely, coin holders consisting of a series of separate posts, of course are not new.

*Graham, No. 1,277,211, granted August 27, 1918, on application filed March 29, 1918.*

*McDonald, No. 1,419,871, granted June 13, 1922, on application filed May 10, 1921.*

*McDonald, No. 1,486,983, granted March 18, 1924, on application filed June 12, 1922.*

It is thought that the mere affixing of a coin holder to such a game rack as the plaintiffs' patent describes, would scarcely rise to the level of patentable invention since the ready handling of coins is merely a convenience and does not constitute an element of the game itself.

■ It is therefore concluded that validity of the patent upon which the plaintiffs' suit is brought has not been demonstrated.

As to the defense of lack of utility, it is thought that no comment is required, because the complained-of structure sufficiently resembles the plaintiffs' to meet that objection.

Since it has been stipulated that the plaintiff is the owner of the Letters Patent in suit, as alleged in paragraph 6, the objection that improper parties have been joined is not to be deemed as having been disposed of by this decision, because the partnership known as M. S. Cowen Co. may or may not hold an exclusive license. The testimony on that subject is quite meager, consisting in the following:

"Q. Do you have any documents showing an exclusive license from Stanley Cowen to the partnership?

"A. No, we have no document. It was by verbal agreement."

If this issue were important, it would require more precise demonstration.

So far as the marking of the plaintiffs' device with patent notice is concerned, the same remark applies, because the same witness testified: "We did have certain labels and stationery printed up with the name of M. & S. Cowen & Co. or M. & S. Cowen Co., with the intention of changing legally the partnership name, but on which nothing further was ever done."

Therefore it has not been clearly shown whether the patent notice was given by the patentee or some one else; again this is thought to be unimportant, in view of the decision on the question of validity.

The question of infringement has been treated but casually, and perhaps it would be well to state that it is not entirely free from doubt, for the reason that the turned-up end of the coin holder in the infringing device does not itself constitute the end stops referred to in the claims in suit; a separate metal piece has been inserted between the end of the rack and the coin holder, and that separate element constitutes the stops. It is assumed, but not decided, that infringement is thus shown.

It results from the foregoing that the defendant must have a decree with costs for the reason that plaintiffs' patent is invalid.

Settle decree, and findings if desired.